**UNITED STATES BANKRUPTCY COURT**　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　　:
In re:　　　　　　　　　　　　　　　　:　　Chapter 7
　　　Michael Rodger Brown,　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　Case No. 18-10617 (JLG)
　　　　　　　　　　　　Debtor.　　　　:
------------------------------------------------------------------------x
John S. Pereira, as Chapter 7 Trustee for the estate of　:
Michael Rodger Brown,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Plaintiff,　　　　:
　　　　　　　　　　　　　　　　　　　　:　　Adv. No. 20-01058 (JLG)
　　　-v-　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
Jennifer Brown, *et al.*,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants.　　　:
------------------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS VI AND VII OF THE COMPLAINT AGAINST DEFENDANT JENNIFER BROWN

**A P P E A R A N C E S :**

AKERMAN LLP
*Counsel for Plaintiff*
666 Fifth Avenue, 20th Floor
New York, NY 10103
By:　　John P. Campo, Esq.
　　　　Darryl R. Graham, Esq.

KAKAR, P.C.
*Counsel for Jennifer Brown*
525 Seventh Avenue, Suite 1810
New York, New York 10018
By:　　Sumeer Kakar, Esq.
　　　　Kalpana Nagampalli, Esq.

LAW OFFICE OF CURTIS A. HEHN
*Counsel for Jennifer Brown*
1007 N. Orange St., 4th Floor
Wilmington, DE 19801
By:　　Curtis A. Hehn, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**Introduction**[1]

In this adversary proceeding, John S. Pereira, as plaintiff and the chapter 7 trustee (the

"Trustee" or "Plaintiff") for the estate of Michael Rodger Brown (the "Debtor"), contends that he

is entitled to receive, on behalf of the Debtor's estate, Marital Assets, including Sale Proceeds,

which he says rightfully belong to the Debtor's estate pursuant to the Judgment of Divorce

entered by the State Court in the Matrimonial Action between the Debtor and Defendant Jennifer

Brown ("Jennifer"). He filed the seven-count Complaint commencing this adversary proceeding

against Jennifer and certain other defendants to recover those alleged assets and to preserve the

estate's alleged rights and claims against them.[2] The matter before the Court is the Trustee's

motion for partial summary judgment (the "Summary Judgment Motion")[3] against Jennifer

pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56")[4] on Count VI

(Conversion) and Count VII (Turnover) of the Complaint, and for entry of a judgment against

---

[1]    Capitalized terms shall have the meanings ascribed to them herein. References to "AP ECF No. __" herein are to documents filed on the electronic docket in this Adversary Proceeding No. 20-01058. References to "ECF No. __" herein are to documents filed on the electronic docket in the chapter 7 case of *In re Michael Rodger Brown*, Case No. 18-10617 (Bankr. S.D.N.Y.), unless otherwise indicated.

[2]    *See* Adversary Complaint, AP ECF No. 1. As filed, the Complaint asserted claims against Jennifer and four other named defendants. *Id.* ¶¶ 9-14. By stipulation dated December 15, 2021, all named defendants other than Jennifer and the Estate of Jill Fingar, Jennifer's late mother, were dismissed from this adversary proceeding. *See* Joint Stipulation of Dismissal and Withdrawal of Motion for Partial Summary Judgment, AP ECF No. 71.

[3]    Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown, AP ECF No. 94. *See also* Plaintiff's Reply in Support of Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown (the "Reply"), AP ECF No. 103. In support of the Summary Judgment Motion, the Trustee filed the *Declaration of John P. Campo in Support of Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown* (the "Campo Declaration"), AP ECF No. 95.

[4]    Rule 56 is made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

Jennifer totaling $210,637.32 (plus costs and prejudgment interest). Jennifer opposes the

motion.[5]

For the reasons set forth herein, the Court grants the Summary Judgment Motion and

awards the Trustee partial summary judgment on Count VI and Count VII of the Complaint, and

directs that a judgment be entered against Jennifer totaling $210,637.32 (plus costs and

prejudgment interest).

## **Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a

core proceeding pursuant to 28 U.S.C. § 157(b).

## **Facts**

In support of the Summary Judgment Motion, the Trustee filed the Plaintiff's Rule 56

Statement.[6] In support of her Opposition, and in response to the Plaintiff's Rule 56 Statement,

Jennifer filed the Defendant's Rule 56 Statement.[7] The Trustee then filed the Plaintiff's

Response to Defendant's Rule 56 Statement.[8] The Plaintiff's Rule 56 Statement consists of 41

---

[5]    *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown (the "Opposition"), AP ECF No. 98. In support of her Opposition, Jennifer filed the *Declaration of Sumeer Kakar in Support of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown* (the "Kakar Declaration"), AP ECF No. 99

[6]    Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Bankruptcy Rule 7056-1 in Support of Trustee's Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown (the "Plaintiff's Rule 56 Statement"), AP ECF No. 96.

[7]    Defendant's (I) Response to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Bankruptcy Rule 7056-1 in Support of Trustee's Motion for Partial Summary Judgment Regarding Counts VI and VII of the Complaint Against Defendant Jennifer Brown, and (II) Statement of Additional Undisputed Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment, AP ECF No. 100.

[8]    Plaintiff's Response to J. Brown's Additional Undisputed Material Facts, AP ECF No. 104.

Statements of Fact.[9] The Trustee supplements his statement with exhibits annexed to the Campo

Declaration. Jennifer essentially does not contest the facts set forth in the Plaintiff's Rule 56

Statement. *See* Defendant's Rule 56 Statement ¶¶ 1-41. She does not challenge the Trustee's

reliance on the documents annexed to the Campo Declaration and relies on certain of those

documents in her Opposition to the motion.

In the Defendant's Rule 56 Statement, Jennifer purports to assert "Additional Undisputed

Material Facts" to the record of the motion. *See* Defendant's Rule 56 Statement ¶¶ 42-67.[10] The

Trustee contends that the inclusion/consideration of those alleged facts in Defendant's Rule 56

Statement runs afoul of Local Rule 7056-1(c). That rule states:

> Papers opposing a motion for summary judgment shall include a correspondingly
> numbered paragraph responding to each numbered paragraph in the statement of
> the moving party, and if necessary, additional paragraphs containing a separate,
> short, and concise statement of additional material facts as to which it is contended
> that there is a genuine issue to be tried.

LBR 7056-1(c). He asks the Court to strike those alleged facts. *See* Plaintiff's Response to

Defendant's Rule 56 Statement ¶ 1. Alternatively, he asserts that those alleged facts are

---

[9]    The two-part Rule 56 Statement is structured, as follows:

    A. The Bankruptcy Filing, the Term Sheet, and the Court's Ruling on the Term Sheet, ¶¶ 1-37

    B. The Deposition of J. Brown, ¶¶ 38-41.

[10]    That portion of her statement is organized, as follows:

    A. J. Brown, and Her Children's, Financial Extremis as a Result of the Debtor's Repeated
    Violations of the Pendente Lite Order, ¶ 42(a) – (k).

    B. The Timing of the Matrimonial Action and the Debtor's Bankruptcy, ¶¶ 43-46.

    C. Disposition of Marital Assets, ¶¶ 47-56.

    D. The Adversary Proceeding, ¶¶ 57-61.

    E. Relevant Actions by the Plaintiff During the Pendency of the Bankruptcy, ¶¶ 62-66.

irrelevant to the Summary Judgment Motion. *See id.* ¶ 2. In any event, the Trustee does not take

a position with respect to the facts themselves for the purpose of the Summary Judgment Motion.

*Id*. However, he disputes the legal conclusions drawn by Jennifer from the Additional

Undisputed Material Facts. *Id.*

      The Local Rule plainly contemplates that the party opposing a summary judgment motion

can include, in its Rule 56 Statement, "additional paragraphs containing a separate, short, and

concise statement of additional material facts as to which it is contended that there is a genuine

issue to be tried." That is what Jennifer purports to do in her Defendant's Rule 56 Statement. The

Court overrules the Trustee's objection to the inclusion of those facts in the record of this matter.

However, in reaching this conclusion, the Court finds that portions of the statement contain facts

that are not material or relevant to the resolution of the Summary Judgment Motion. For

example, and without limitation, the additional facts relating to "J. Brown, and Her Children's,

Financial Extremis as a Result of the Debtor's Repeated Violations of the Pendente Lite Order"

and to the "Disposition of Marital Assets" have no bearing on the resolution of the Summary

Judgment Motion.

      The following relevant and material facts are not in dispute.

      On March 24, 2001, Jennifer and the Debtor were married. *See* Plaintiff's Rule 56

Statement ¶ 1. On March 26, 2013, following a year-long separation, Jennifer began a divorce

proceeding against the Debtor (the "Matrimonial Action")[11] in the Supreme Court for the State of

New York (the "State Court"). *See id.* ¶ 2.

      On March 5, 2018 (the "Petition Date"), before the equitable distribution of marital assets

was resolved by the State Court, the Debtor commenced his bankruptcy case in this Court (the

---

[11]   *See* Jennifer Brown v. Michael Brown, Index No. 303682/2013 (Sup. Ct. N.Y. Cnty).

"Chapter 7 Case") by filing a voluntary petition for relief under chapter 7 of the Bankruptcy

Code. *See id.* ¶ 3.[12] The same day, John S. Pereira was appointed as chapter 7 trustee. *See id.* ¶ 4.

By order dated April 8, 2018 (the "April 2018 Order"),[13] the Court granted Jennifer relief

from the automatic stay in the Chapter 7 Case to continue the Matrimonial Action, in all respects,

including "the rendering of [a] judgment determining the nature and extent of marital property,

the nature and extent of Jennifer's interest in such property, and the equitable distribution of such

property[.]" *See* April 2018 Order at 2. The order also provides that

> while Jennifer is free to seek to collect or obtain any property that is not part of the
> Debtor's bankruptcy estate, including without limitation post-petition income and
> assets, any distribution of property of the bankruptcy estate and any determination
> of title to assets of the bankruptcy estate, whether for collection of support,
> equitable distribution or otherwise, shall be subject to this Court's review and
> approval . . . .

*Id.*

On July 27, 2018, Jennifer filed a contingent unsecured proof of claim in the sum of

$6,375,000 ("Claim No. 6")[14] on the claims register in the Chapter 7 Case. *See* Plaintiff's Rule

56 Statement ¶ 9. The claim is on account of "$12.75 million in marital funds subject to

equitable distribution" that "[e]xperts in action for divorce were unable to trace" (the

"Unaccounted For Marital Assets"). *See* Claim No. 6 at 2.

---

[12]    *See* Official Form 101 Voluntary Petition for Individuals Filing for Bankruptcy, ECF No. 1.

[13]    Order Partially Granting and Partially Denying Motion on Short Notice to Dismiss the Debtor's Petition or, in
the Alternative, for Relief from the Automatic Stay to Permit the Non-Debtor Spouse to Proceed with the State
Court Matrimonial Action to Enforce Temporary Support Orders, Identify Unaccounted-For Matrimonial Assets,
Determine Custody and the Equitable Distribution of Matrimonial Property, and Dissolve the Marriage, ECF No.
17; *see also* Motion on Short Notice to Dismiss the Debtor's Petition or, in the Alternative, for Relief from the
Automatic Stay to Permit the Non-Debtor Spouse to Proceed with the State Court Matrimonial Action to Enforce
Temporary Support Orders, Identify Unaccounted-For Matrimonial Assets, Determine Custody and the Equitable
Distribution of Matrimonial Property, and Dissolve the Marriage, ECF No. 6.

[14]    A copy of Claim No. 6 is annexed to the Campo Declaration as Exhibit C.

On February 7, 2019, the State Court referred the remaining financial and custody issues in the Matrimonial Action, including the issue of equitable distribution of marital property, to Special Referee Marilyn T. Sugarman (the "Special Referee"). *See* Plaintiff's Rule 56 Statement ¶ 10.

On July 30, 2019, Jennifer and the Debtor entered into a term sheet (the "Term Sheet")[15] in the Matrimonial Action. As relevant, in the Term Sheet, Jennifer and the Debtor resolved all matters relating to the equitable distribution between them of the assets that she and/or the Debtor acquired during their marriage (the "Marital Assets").[16] In substance, under the Term Sheet, Jennifer abandoned to the Debtor any right or claim that she may have to the Marital Assets, in consideration for a payment to be made by the Debtor out of his post-bankruptcy funds (the "Equitable Distribution Payment") equal to "$2,500,000 as [Jennifer's] share of equitable distribution." Term Sheet ¶ 2.[17] The Term Sheet calls for Jennifer to identify (i) the Marital Assets that she sold during the Matrimonial Action, (the "Transferred Marital Assets"), *see id*. ¶ 4(a)-(d), and (ii) the Marital Assets that Jennifer possessed as of the execution of the Term Sheet or donated or gifted during the Matrimonial Action (the "Other Marital Assets", with the Transferred Marital Assets, the "Jennifer Marital Assets"), *see id.* ¶ 4(e)-(i). The Term Sheet requires Jennifer to provide the Trustee with a list of the Jennifer Marital Assets within ten days

---

[15]    A copy of the Term Sheet is annexed to the Campo Declaration as Exhibit D.

[16]    The Marital Assets include all jewelry, furniture and/or furnishings, artwork, handbags, clothing, shoes, or any other possession acquired by either Jennifer or the Debtor during the marriage. *See* Term Sheet ¶ 4.

[17]    The sum of $500,000 of the Equitable Distribution Payment is earmarked to satisfy certain of Jennifer's expenses; the remaining $2,000,000 is payable in eight equal installments between February 28, 2020 through August 31, 2023. *See id*. ¶ 2. The Debtor's father has guaranteed payment of the Equitable Distribution Payment. *See id.* ¶ 3.

after execution of the Term Sheet (the "Accounting Obligation"). *See* Term Sheet ¶ 4.[18] It also

calls for Jennifer to deliver to the Trustee the Other Marital Assets, within thirty days of

execution of the Term Sheet (the "Turnover Obligation"). *See id.* ¶ 5. The Term Sheet does not

explicitly require the Debtor to turn over or deliver the Transferred Marital Assets or the

proceeds thereof (the "Sale Proceeds") to the Trustee.

On July 30, 2019, the Special Referee took allocutions from both Jennifer and the Debtor,

establishing their respective approval of the Term Sheet and the authenticity of their signatures

on the Term Sheet.[19] *See* Plaintiff's Rule 56 Statement ¶ 14. At that time, Jennifer confirmed that

she had read the Term Sheet, discussed it with her lawyers, signed it, and believed it to be a "fair

and reasonable settlement of the economic issues in [the] [M]atrimonial [A]ction." Allocution

Hr'g Tr. at 4-7. After allocuting the Debtor and receiving similar answers, the Special Referee

accepted the Term Sheet as the basis for Jennifer's and the Debtor's Judgment of Divorce. *See*

*id.* at 14:8-14.

On November 1, 2019, the State Court entered the Judgment of Divorce,[20] which finally

resolved the Matrimonial Action. Without limitation, it expressly incorporated the Term Sheet

and directed the Debtor to pay to Jennifer a "total amount of $2,500,000 as her share of equitable

distribution." Judgment of Divorce at 6; *see* Plaintiff's Rule 56 Statement ¶ 15.

---

[18]    At some point prior to the Trustee's deposition of Jennifer on December 17, 2020 and pursuant to paragraph 4 of the Term Sheet, Jennifer provided the Trustee with a list of Marital Assets as of August 7, 2019, that Jennifer either sold, gifted, or were stolen or no longer in her possession (the "Marital Asset List"). A copy of the Marital Asset List is annexed to the Campo Declaration as Exhibit W. The Trustee contends that the list includes items still in Jennifer's possession that she has not yet turned over. *See* Plaintiff's Rule 56 Statement ¶ 39. Jennifer contends, however, that she "ultimately turned over, or tried to turn over, all marital assets in her possession to the Trustee and the Trustee's counsel." Defendant's Rule 56 Statement ¶ 39. The Court does not need to resolve that dispute in adjudicating the Summary Judgment Motion.

[19]    A copy of the transcript of the allocutions conducted by the Special Referee (the "Allocution Hr'g Tr.") is annexed to the Campo Declaration as Exhibit E.

[20]    A copy of the Judgment of Divorce is annexed to the Campo Declaration as Exhibit F.

On November 26, 2019, in the Chapter 7 Case, the Debtor filed a motion asking this

Court to approve the Term Sheet (in furtherance of the April 2018 Order), and to expunge

Jennifer's Claim No. 6 (the "Debtor's November 2019 Motion").[21] The Trustee joined in the

motion.[22] Jennifer filed (i) her Objection To Debtor's November 2019 Motion[23] and (ii) a letter

in response to the Trustee's joinder to the motion (the "January 2020 Letter").[24]

In support of his request to expunge the claim, the Debtor argued that the Judgment of

Divorce and Term Sheet incorporated therein "settle[d] the issue of equitable distribution" such

that Jennifer is solely entitled to the Equitable Distribution Payment and has "no claim

whatsoever against the Debtor's estate." Debtor's November 2019 Motion ¶¶ 14, 17. He also

contended that in the negotiations leading up to the execution of the Term Sheet, he presented

Jennifer with two alternative offers for resolving her claim to equitable distribution of the Marital

Assets. The first was that Jennifer would retain ownership of the Jennifer Marital Property and

he would pay her an Equitable Distribution Payment totaling $2.25 million; the alternative was

that Jennifer would not retain any interest in the Marital Assets (including the Jennifer Marital

---

[21]    *See* Motion to Approve Title to and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial
Action, and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. §502(a) and Fed. R. Bankr. P. 3007,
ECF No. 85; *see also* Debtor's Reply to Jennifer Brown's Response to Trustee's Joinder to Debtor's Motion to
Approve Title to and Distribution of Marital Property Pursuant to Term Sheet in Matrimonial Action, and Expunge
Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007, ECF No. 98. A copy of
the reply is annexed to the Campo Declaration as Exhibit K.

[22]    *See* Joinder to, and Memorandum in Support of, Debtor's Motion to Approve Title to and Distribution of
Marital Property Pursuant to Term Sheet in Matrimonial Action, and Expunge Claim No. 6 of Jennifer Brown
Pursuant to 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3007 and in Response to Opposition Thereto (the "Trustee's
Joinder to Debtor's November 2019 Motion"), ECF No. 92. A copy of the Trustee's Joinder to Debtor's November
2019 Motion is annexed to the Campo Declaration as Exhibit J.

[23]    Memorandum of Law in Opposition to Debtor's Motion to Approve the Matrimonial Settlement and Expunge
Jennifer Brown's Claim No. 6, ECF No. 89. A copy of the objection is annexed to the Campo Declaration as Exhibit
H. In support of the objection, Jennifer filed a declaration from her counsel, Arthur L. Porter, Jr. *See* Declaration of
Arthur L. Porter, Jr. (the "Porter Declaration."), ECF No. 88.

[24]    *See* Letter from Fischer Porter & Thomas, P.C. dated January 9, 2020, ECF No. 97.

Assets) and he would pay her an Equitable Distribution Payment equal to $2.5 million (with the

Debtor and his estate retaining ownership of all Marital Assets). *See id.* ¶ 14. The underlying

rationale for the proposal was that only Jennifer knew the extent of the Transferred Marital

Assets and that she could select the alternative that best met her financial needs. In objecting to

the Debtor's November 2019 Motion, Jennifer's counsel acknowledged that Jennifer had been

offered the two alternatives, but denied that under the Term Sheet, Jennifer waived, released or

withdrew her claim to the Unaccounted For Marital Assets. *See* Porter Declaration ¶¶ 6-7.

On March 13, 2020, the Court issued a decision resolving the Debtor's November 2019

Motion (the "Memorandum Decision").[25] The Court denied the Debtor's request for approval of

the Term Sheet as moot, because the Term Sheet does not purport to resolve, or even address,

matters relating to the allocation of estate assets among Jennifer and the Debtor and does not call

for the distribution of estate property among them. *See* Memorandum Decision at 17. But the

Court sustained the objection to Jennifer's Claim No. 6, over Jennifer's opposition, finding that

the Judgment of Divorce "resolved all matters relating to the identification and distribution of

marital property and plainly was 'a final settling of accounts between marital partners with an

equitable interest in all marital property.'" *Id.* at 21 (quoting *Pangea Capital Mgmt. LLC*, 34

N.Y. 3d 38, 46 (2019)) (alteration omitted). The Court found that under the Term Sheet, Jennifer

was entitled only to the $2.5 million Equitable Distribution Payment, which would be satisfied

from the Debtor's post-petition income, and not from estate property. *See id.* at 27-28.

Essentially, the Court found that Jennifer had resolved her equitable distribution claim by

"accepting the Equitable Distribution Payment and surrendering her rights to marital property to

---

[25]    Memorandum Decision on Debtor's Motion to Approve Title to and Distribution of Marital Property Pursuant
to Term Sheet in Matrimonial Action, and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a)
and Fed. R. Bankr. P. 3007, ECF No. 112.

the estate (through the Chapter 7 Trustee)." *Id.* at 38. The Court held that all Marital Assets,

including the Unaccounted For Marital Assets which formed the basis for Claim No. 6,

"constitute property of the Debtor's chapter 7 estate." *Id.* at 38.

On April 27, 2020, the Court entered an order expunging the claim (the "Claim

Expungement Order").[26]

On March 5, 2020, the Trustee filed the Complaint commencing this adversary

proceeding. As relevant, the Complaint asserts a claim for conversion of the Marital Assets

and/or the Sale Proceeds against Jennifer, *see* Complaint ¶¶ 50-55 (the "Conversion Claim" or

"Count VI"), and a claim against Jennifer for the immediate return, or turnover, of estate

property in her possession, i.e., the Marital Assets in her possession, including the Sale Proceeds,

pursuant to section 542 of the Bankruptcy Code (the "Turnover Claim" or "Count VII"), *see id.*

¶¶ 56-60.

On April 7, 2020, Jennifer filed an answer (the "Answer")[27] to the Complaint denying in

large part the substantive allegations in the Complaint and asserting various affirmative defenses.

On May 6, 2020, Jennifer appealed the Memorandum Decision and the Claim

Expungement Order.[28] On February 11, 2021, the District Court for the Southern District of New

York (the "District Court") affirmed the decision and order (the "District Court Order").[29] In

---

[26]    *See* Order Regarding Debtor's Motion to Approve Title to and Distribution of Marital Property Pursuant to
Term Sheet in Matrimonial Action, and Expunge Claim No. 6 of Jennifer Brown Pursuant to 11 U.S.C. § 502(a) and
Fed. R. Bankr. P. 3007 (the "Claim Expungement Order"), ECF No. 120.

[27]    *See* Defendant Jennifer Brown's Answer and Defenses to Adversary Complaint, AP ECF No. 6. A copy of the
Answer is annexed to the Kakar Declaration as Exhibit 5.

[28]    *See* Notice of Appeal and Statement of Election, ECF No. 126.

[29]    *See* Opinion and Order, Jennifer Brown v. Michael Rodger Brown, 1:20-cv-03943 (MKV) (S.D.N.Y. Feb. 11,
2021), ECF No. 14. A copy of the District Court Order is annexed to the Campo Declaration as Exhibit U.

doing so, the District Court determined that "[c]lear principles of *res judicata* bar the relitigation of Jennifer's claim to equitable distribution after the issue [of equitable distribution] was entirely settled in the [Matrimonial] Action," as is required under section 170(7) of the New York Domestic Relations Law (the "DRL"). *See* District Court Order at 8. The District Court concluded that because the claim is "related to title to marital property," allowing Jennifer to assert Claim No. 6 would "prevent 'a final settling of accounts between marital partners with an equitable interest in all marital property.'" *Id.* at 11 (quoting *Boronow v. Boronow*, 71 N.Y.2d 284, 290, 525 N.Y.S.2d 179, 183 (1983)).

Jennifer did not appeal the District Court Order. The Memorandum Decision, the Claim Expungement Order, and the District Court Order are all final judgments on the merits. *See* Plaintiff's Rule 56 Statement ¶ 37; Defendant's Rule 56 Statement ¶ 37.

## Legal Standard

To prevail on a motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Ning Yen Yiao v. Kao (In re Kao)*, 612 B.R. 272, 279 (Bankr. S.D.N.Y. 2020). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). A party "must establish a genuine issue of fact by 'citing to particular parts of materials in the record." *In re Kao*, 612 B.R. at 280 (citing Fed. R. Civ. P. 56(c)(1)(A)); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

In evaluating whether there exists a dispute of material fact, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *see also Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003); *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Hayes v. N.Y.C Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying [the summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) (same).

### The Summary Judgment Motion

The Trustee seeks partial summary judgment on Count VI and Count VII of the Complaint and entry of a judgment against Jennifer totaling $210,637.32, plus costs and prejudgment interest, representing the Sale Proceeds Jennifer received from the sale of the Transferred Marital Assets between March 26, 2013, when the Matrimonial Action started, and July 30, 2019, the date of the Term Sheet.

The Trustee contends that, in entering into the Term Sheet, Jennifer settled all disputes with the Debtor regarding the distribution of the Marital Assets and in doing so, she abandoned any interest she ever had in those assets, in consideration for Equitable Distribution Payment from the Debtor totaling $2.5 million. *See* Summary Judgment Motion ¶ 1. The Trustee maintains that, as a consequence, all Marital Assets ever held by either the Debtor or Jennifer became property of the Debtor's estate to be liquidated by him for the benefit of creditors. *See id.* The Marital Asset List reflects that Jennifer received Sale Proceeds totaling $210,637.32 from

her sale of Transferred Marital Assets. *See id.* The Trustee asserts that he is entitled to partial

summary judgment on Counts VI and VII of the Complaint and for entry of a judgment against

Jennifer totaling $210,637.32 (plus costs and prejudgment interest) because:

> A. In the Memorandum Decision, the Court found that the Marital Assets belong
> to the Debtor's estate and that ruling is barred by the doctrine(s) of *res judicata*
> and/or collateral estoppel in this adversary proceeding as to the ownership of the
> Marital Assets.

> B. The Term Sheet itself, as incorporated into the Final Judgment of Divorce,
> unambiguously states that "in accordance with Paragraph 2 on pages 1 through 2
> of the Term Sheet, Defendant shall pay to the Plaintiff or on behalf of the Plaintiff
> a total amount of $2,500,000.00 as her share of equitable distribution . . . ." As
> such, under the Term Sheet Jennifer waived any claim to the Marital Assets.

> C. It is undisputed that Jennifer received $210,637.32 in Sale Proceeds, which she
> has not turned over to the Trustee and are subject to turnover.

> D. Jennifer's failure to obtain court approval to sell the Marital Property to return
> the Sale Proceeds amounts to a conversion of property of the estate.

*See id.* ¶ 2. The Trustee argues that because Jennifer unlawfully sold Marital Assets belonging to

this estate without obtaining court approval or consent from the Debtor or Trustee and failed to

turn over the proceeds from the sale of those assets to this estate, he is entitled to partial

summary judgment on Counts VI (Conversion) and VII (Turnover) of the Complaint. *See id.* ¶ 3.

In opposing the Summary Judgment Motion, Jennifer does not address the Trustee's

contention that application of *res judicata* or collateral estoppel precludes her from contesting

the estate's ownership of the Marital Assets. Still, she asserts that the Court must deny the

Summary Judgment Motion because, without limitation, as a matter of law, the Trustee cannot

demonstrate grounds for relief under either Count VI or Count VII of the Complaint. In doing so,

she focuses on the undisputed facts that she sold every Transferred Marital Asset years before

the Petition Date and spent the Sale Proceeds on a rolling basis, years before the Petition Date.

*See* Opposition ¶¶ 1-2.

Jennifer maintains that an essential element of conversion under New York common law is that the subject of the claim be specific and identifiable, and that while money can be the subject of a conversion claim under certain circumstances, it must be specifically identifiable (usually by being segregated) and subject to an obligation to be returned. *See id.* ¶ 5. She says that the Trustee cannot satisfy these requirements because she never placed the Sale Proceeds in a segregated account that was restricted for the Debtor's benefit. Jennifer maintains that she spent the money as it came in to pay for household and living expenses, and to fill in the shortfall caused by the Debtor's alleged failure to meet his State Court-ordered maintenance and support obligations to her and their children. *See id.* She also contends that, for the Trustee to have a valid conversion claim, he must prove that either he or the Debtor had a superior ownership right to the Transferred Marital Assets that Jennifer sold prior to their conversion. *See id.* ¶ 6. She asserts that he cannot do that since neither the Debtor nor Jennifer had a superior right to the Marital Assets during the pendency of the Matrimonial Action before the Petition Date. *See id.* She says that the Trustee's superior right in the Marital Assets did not arise until almost 6 years and four months after the Matrimonial Action was filed, when the Debtor and Jennifer executed the Term Sheet on July 30, 2019. *See id.* She says that this was long after she sold the Transferred Assets and spent the Sale Proceeds. *See id.*

Jennifer says that the Trustee cannot prevail under his Count VII turnover claim under section 542(a) of the Bankruptcy Code because, to obtain relief under that section, he must demonstrate that she had "possession, custody, or control, [of the Sale Proceeds] during the case," and the undisputed facts prove that Jennifer did not have possession of the Sale Proceeds as of the Petition Date. Opposition ¶ 3. She asserts that the Trustee cannot obtain turnover of the Sales Proceeds pursuant to section 542(b) of the Bankruptcy Code because nothing in the Term

Sheet, or Final Judgment of Divorce, creates a mature, immediate right to payment, specific as to the amount due and payable, with respect to property sold by Jennifer during the five-year period before the Debtor filed for bankruptcy because they do not obligate Jennifer to deliver the Transferred Marital Assets and/or the Sale Proceeds to the Trustee. *See id.* ¶ 4.

The matter is ripe for summary judgment. In analyzing the motion, the Court first considers whether the application of the doctrine of *res judicata* and/or collateral estoppel precludes Jennifer from challenging the Court's determination in the Memorandum Decision that the Marital Assets constitute property of the Debtor's estate, and whether under the Term Sheet, Jennifer waived her claims under state law to the Marital Assets. Thereafter, the Court analyzes whether the Trustee has met his burden of proving that he is entitled to summary judgment on the Conversion and/or Turnover Claims.

As set forth below, the Court finds that Jennifer is collaterally estopped by the Memorandum Decision from contending that the Marital Asset do not constitute estate property. Moreover, in any event, the Court finds that under the Term Sheet, Jennifer waived any claim to the Marital Assets in consideration for the Debtor's $2.5 million Equitable Distribution Payment to her. Those assets constitute property of the Debtor's estate, and under the Term Sheet, Jennifer is required to account for those assets and turn them over to the Trustee. Finally, the Trustee has demonstrated that he is entitled to judgment as a matter of law against Jennifer under Count VI and Count VII of the Complaint.

## Discussion

### Res Judicata

The doctrine of *res judicata* provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised

16

in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). The doctrine assures finality in the resolution of disputes. *19 Court St. Assocs., LLC v. Resol. Tr. Corp. (In re 19 Court Str. Assocs., LLC)*, 190 B.R. 983, 997 (Bankr. S.D.N.Y. 1996); *see Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345-46 (2d Cir. 1995). *Res judicata* operates to bar later litigation if an earlier decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (quoting *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)); *see Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012).

A federal court must give a state court judgment the same preclusive effect that a court in the state in which the judgment was entered would give the judgment. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987); *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) ("[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred."). New York law adopts a transactional approach to *res judicata*, which "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos*, 14 F.3d at 790 (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 429 N.E.2d 748 (1981)); *see O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981).

"In general, a final judgment of divorce issued by a [New York] court having both subject matter and personal jurisdiction has the effect of determining the rights of the parties with respect to every material issue that was actually litigated or might have been litigated." *Rainbow v. Swisher*, 72 N.Y. 2d 106, 110, 531 N.Y.S.2d 775, 777, 527 N.E.2d 258, 260 (1988) (citations omitted); *see also In re Purpura*, 170 B.R. 202, 209-10 (Bankr. E.D.N.Y. 1994) ("In New York, a final judgment in a marital action rendered by a court of competent jurisdiction determines the rights of the parties." (citing *In re Greenwald*, 134 B.R. 729, 731 (Bankr. S.D.N.Y. 1991))).

The State Court is a court of competent jurisdiction that had subject matter jurisdiction over the matters at issue in the Matrimonial Action and personal jurisdiction over Jennifer and the Debtor. The Judgment of Divorce is a final judgment enforceable in the state of New York. *See* Memorandum Decision at 23-24 ("The Term Sheet is incorporated into the Judgment of Divorce, and the State Court had jurisdiction to issue the judgment. The Judgment of Divorce is a final judgment on the merits that resolves all matters that were or could have been raised in the Matrimonial Action, including all those related to equitable distribution of the marital assets."). "Accordingly, the equitable distribution of marital assets granted by that final judgment . . . is res judicata as to the property rights of [Jennifer] and [the Debtor] in this Court." *In re Purpura*, 170 B.R. at 210. In the Chapter 7 Case, Jennifer asserted a claim against the Debtor in respect of her alleged right to the Unaccounted For Marital Assets. The Court held that the Judgment of Divorce was entitled to *res judicata* effect and barred her claim. *See* Memorandum Decision at 24 ("[Jennifer] is barred from [asserting the Claim No. 6] by application of the principle of res judicata.").

18

The Trustee presents his *res judicata* argument in the context of the causes of action he has against Jennifer for turnover under section 542 of the Bankruptcy Code and New York common law conversion for her failure to account for the Transferred Marital Assets or Sale Proceeds. The causes of action at play in the Matrimonial Action and the Debtor's November 2019 Motion  dealt exclusively with the equitable distribution of and title to marital assets and were asserted by the Debtor and Jennifer. Here the issue of title to Marital Assets is a material issue but it pertains to different causes of action—the Conversion Claim and the Turnover Claim—asserted by the Trustee, a different party. Because the same claims or causes of action are not at issue herein and in the Matrimonial Action, the doctrine of *res judicata* does not apply. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979) ("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies in the same cause of action.").

Moreover, while New York law adopts a transactional approach to *res judicata* that would bar a "later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief", *Burgos*, 14 F.3d at 790, the doctrine is not applicable herein. Although the facts and legal issues relevant to this action and the Matrimonial Action largely overlap, the Trustee's claims are not merely the same claims asserted by Jennifer in the Matrimonial Action, in different form, asserting a different legal theory or demanding different legal relief. *See Hyman v. Hillelson*, 79 A.D.2d 725, 726, 434 N.Y.S.2d 742, 744 (1980) ("A subsequent cause of action does not differ from the first merely because it denotes one of the several separately stated claims arising out of the same foundation facts; or relates to different legal theories of recovery; or demands different legal relief."), *aff'd*, 55 N.Y.2d 624, 430 N.E.2d 1304 (1981). Rather, Jennifer's rights to

19

equitable distribution of marital property acquired during her marriage upon her divorce from the

Debtor derive from the Domestic Relations Law, while the Trustee's alleged rights to the Marital

Assets or Sale Proceeds derive from, on the Turnover Claim, federal bankruptcy law and, on the

Conversion Claim, New York common law. Additionally, the "gravamen of the wrong" upon

which the Trustee's action is grounded differs materially from the wrong supporting Jennifer's

right to equitable distribution. *Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 379 N.E.2d

172 (1978) ("But even if there are variations in the facts alleged, or different relief is sought, the

separately stated 'causes of action' may nevertheless be grounded on the same gravamen of the

wrong upon which the action is brought."). As discussed below, the Trustee will prevail on the

Turnover and Conversion Claims if he proves that Jennifer's conduct with respect to the property

at issue satisfies the elements of those claims—namely, that she refused to turn over property of

the Debtor's estate pursuant to the requirement to do so under section 542 of the Bankruptcy

Code, *see, e.g.*, 11 U.S.C. § 542(a), and that she exercised dominion over or interfered with

property of the estate, in derogation of the rights of its owner, the estate (through the Trustee).

*See Pappas v. Tzolis*, 20 N.Y.3d 228, 958 N.Y.S.2d 656, 982 N.E.2d 576 (2012). Accordingly,

even considering New York's transactional approach to *res judicata*, the doctrine does not apply.

*See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014) (reversing district court and

holding that claim is not barred by *res judicata* where the Plaintiff's "complaint is properly read

at this stage of the litigation to assert liability based on *new*, post-settlement conduct . . . even

though 'premised on facts representing a continuance of the same course of conduct.'") (quoting

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003)).

Collateral Estoppel

In contrast to *res judicata*, collateral estoppel focuses on the issue being relitigated, irrespective of the causes of action or claims involved. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."' *Ferring B.V. v. Serenity Pharms., LLC*, 391 F. Supp. 3d 265, 283 (S.D.N.Y. 2019) (emphasis omitted) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)); *see also Slavin v. Benson*, 493 F. Supp. 32, 33-34 (S.D.N.Y. 1980) ("Under the doctrine of collateral estoppel, 'certain questions actually litigated and determined in one action are precluded from relitigation in a later action when the issues arise anew, even in a suit on a different cause of action.'") (quoting Maurice Rosenberg, *Collateral Estoppel in New York*, 44 ST. JOHN'S L.R. 165, 166 (1969)). "[T]he application of the collateral estoppel doctrine differs based on the forum in which first judgment was entered." *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 800 (Bankr. E.D.N.Y. 2014). Courts hold that "[when] the issues sought to be precluded were decided by a *federal* court . . . the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel." *Id.* (quoting *FTC v. Wright (In re Wright)*, 187 B.R. 826, 832 (Bankr. D. Conn. 1995)); *see also Smith v. Entrepreneur Media, Inc.*, Adv. No. 01-02219-A, 2009 WL 7809005, at *8 (B.A.P. 9th Cir. Dec. 17, 2009) ("The application of issue preclusion to a prior federal judgment is determined by federal law."), *aff'd* 465 Fed. App'x 707 (9th Cir. 2012). However, in applying that standard, courts recognize that the application of collateral estoppel may differ based on whether the matter decided is a claim under federal or state law. *In re Qiao Lin*, 576 B.R. 32, 46 (Bankr. E.D.N.Y. 2017); *cf. De Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 23 (Bankr. E.D.N.Y. 2015) ("[S]tate law rules of

preclusion should be applied to state law claims that have been determined by a federal court

exercising pendent or supplemental jurisdiction under 28 U.S.C. § 1367 in a federal question

case.").

The Memorandum Decision involved a determination by this Court, a federal court, of an

issue of state law—whether Jennifer retained any interest in the Unaccounted For Marital Assets

that the Debtor allegedly hid from the State Court and Jennifer. Under federal law, application of

collateral estoppel requires that

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually
> litigated and decided in the previous proceeding; (3) the party had a full and fair
> opportunity to litigate the issue; and (4) the resolution of the issue was necessary to
> support a valid and final judgment on the merits.

*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253,

258 & n.5 (2d Cir. 2003)). In New York, "[t]he doctrine of collateral estoppel [bars] a party from

relitigating an issue which has previously been decided against him in a proceeding in which he

had a fair opportunity to fully litigate the point." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d

Cir. 1991) (quoting *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67 (1985));

*see Schwartz v. Publ. Adm'r of Co. of Bronx*, 24 N.Y.2d. 65, 71, 246 N.E.2d 735 (1969). While

New York state collateral estoppel law is similar to its federal counterpart, it imposes the slightly

different requirement that the "issue . . . raised previously . . . be decisive of the present action."

*See Farrell v. Burke*, 449 F.3d 470, 482-83 (2d Cir. 2006) (quoting *Curry v. City of Syracuse*,

316 F.3d 324, 331 & n.4 (2d Cir. 2003)). The party invoking collateral estoppel "bears the

burden of proving that the issues involved . . . are identical, while the opponent of preclusion has

the burden of proving the absence of a full and fair opportunity to litigate the issue in the prior

proceeding." *Crespo v. N.Y.C. Police Comm'r*, 930 F. Supp. 109, 114 (S.D.N.Y. 1996); *see also*

*Evans v. Ottimo*, 469 F.3d 278, 281-82 (2d Cir. 2006) ("The party seeking the benefit of

22

collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue.") (quoting *Kaufman*, 65 N.Y.2d at 456).

The Trustee contends that all requirements of both the federal and New York collateral estoppel test are satisfied because (i) the meaning and enforceability of the Term Sheet and the Judgment of Divorce were at issue in both the Debtor's November 2019 Motion and the Matrimonial Action, (ii) the dispute was actually litigated and decided by the Court in its Memorandum Decision; (iii) the parties had full and fair opportunity to litigate the issues; and (iv) the interpretation of the meaning and enforceability of the Term Sheet and the Judgment of Divorce were necessary to the Court's determination in resolving the Debtor's November 2019 Motion to expunge Jennifer's claim. *See* Motion ¶ 15. He argues that this Court has already determined that "all marital assets belong to the estate and that the items sold by [Jennifer] were indisputably the Debtor's property in the Memorandum Decision, those same findings collaterally estop [Jennifer] from making any arguments that contradict the Court's findings." *Id.*

While the Trustee's analysis focuses on the federal test for collateral estoppel, the Court nonetheless agrees that he has satisfied the New York collateral estoppel test. The Trustee has satisfied his burden in establishing that the issues of title to Marital Assets and Jennifer's entitlement to those assets have been finally settled by this Court in the Memorandum Decision, the District Court in its affirmance of the Memorandum Decision and Expungement Order, and the State Court in the Judgment of Divorce. Jennifer did not appeal either the District Court Order or the Judgment of Divorce, both of which are final.

Moreover, the parties actually litigated the issues. In support of her Objection To Debtor's November 2019 Motion, Jennifer contended that she had a claim against property of the

Debtor and that *res judicata* did not apply because the issue of equitable distribution was distinct from the issue of her entitlement to "recovery of fraudulently concealed and undisclosed prepetition assets." January 2020 Letter at 2; *see also* Objection To Debtor's November 2019 Motion at 10 ("It was <u>never</u> agreed, and the Term Sheet does <u>not</u> provide, that Jennifer conveys 'title to all marital property to the debtor,' or 'surrenders any claim to marital property,' as the debtor now falsely and absurdly claims."). The Memorandum Decision addresses each of Jennifer's objections. Jennifer, who bears the burden of demonstrating that she lacked the full and fair opportunity to litigate the issues, does not so contend. Moreover, the record is clear that she had a fulsome opportunity to and did litigate the issues underlying her objection.

Under New York law, an issue is decisive "if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Curry v. City of Syracuse*, 316 F.3d at 332; *see also Evans*, 469 F.3d at 283; *Donohue Candy and Tobacco Co., Inc. v. Consumer Prods. Distribs., Inc.*, 422 F. Supp. 3d 637, 645 (E.D.N.Y. 2019). As set forth below, the issues of title to marital property and Jennifer's claim to estate property are decisive herein because to prevail on both the Turnover Claim and the Conversion Claim, the Trustee must show that the Marital Assets are estate property and that he had "legal ownership or an immediate superior right of possession to a specific identifiable thing." *Matter of Channel Marine Sales, Inc. v. City of New York*, 75 A.D.3d 600, 601, 903 N.Y.S.2d 922 (2010).

The Judgment of Divorce (and incorporated Term Sheet) effectively transferred any and all of Jennifer's interests in the marital property, including the Marital Assets, to the Debtor's estate. The Turnover Obligation in the Term Sheet does not expressly obligate Jennifer to deliver the value of the Transferred Marital Assets and/or the Sale Proceeds to the Trustee. However, that Jennifer must do so is the only conclusion that flows from this Court's determination in the

24

Memorandum Decision that all marital property of the Debtor is property of the estate. Moreover, it is the only conclusion that conforms to the State Court's "final settling of accounts between marital partners with an equitable interest in all marital property." *See* Memorandum Decision at 21 (quoting *Pangea Cap. Mgmt., LLC*, 34 N.Y.3d at 46). In substance, Jennifer's argument that there was no specific requirement in the Term Sheet for her to turn over the Marital Assets to the Trustee amounts to a repudiation of those determinations. Jennifer is collaterally estopped from maintaining that the Term Sheet did not obligate her to turn over or account for the value of the Transferred Marital Assets and/or Sales Proceeds, despite the Term Sheet's failure to say so specifically. *See BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) ("The prior decision need not have been explicit on point, since if by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel." (quoting *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986)); *see also In re Qiao Lin*, 576 B.R. at 47 ("Courts in this Circuit have found that the issues presented in the two actions need not be absolutely identical, although 'the legal standards governing their resolution [must not be] significantly different. Rather, it is sufficient that the issues presented in [the earlier litigation] are *substantially the same* as those presented by [the later] action" (citation omitted) (quoting *Cerny v. Rayburn*, 972 F. Supp. 2d 308, 316 (E.D.N.Y. 2013))). The Court agrees with the Trustee that to hold otherwise would result in Jennifer's ability to "retain the value of the deal she struck, the $2,500,000, without the burden of that choice (i.e., having to return either the [M]arital [A]ssets which belong to the Debtor's estate or the [S]ale [P]roceeds, which also belong to this estate)." Motion ¶ 10. It would ignore the terms of the agreement Jennifer made with the Debtor and the consideration she received in exchange for relinquishing her claim to the Marital Assets.

<u>Whether Jennifer Waived Her Claim to Marital Assets in the Term Sheet</u>

The Trustee also argues that a direct and clear reading of the plain language of the Term

Sheet (as incorporated in the Judgment of Divorce) proves that under the agreement, Jennifer

waived her claims to Transferred Marital Assets and Sale Proceeds in favor of the Debtor's

estate which now owns those assets. *See* Motion ¶ 16.

Court orders, like the Judgment of Divorce, are interpreted as contracts and "reliance

upon certain aids to construction is proper, as with any other contract." *U.S. v. ITT Cont. Banking*

*Co.*, 420 U.S. 223, 238 (1975); *see also In re Oyster Bay Cove, Ltd.*, 161 B.R. 338, 343 (Bankr.

E.D.N.Y. 1993) ("Because the June 6, 1991 Order and annexed terms of sale formed the basis of

the agreement of the parties, it must be construed according to general principles of contract

law."). "The rules of contract interpretation, however, do not contemplate considering any

provision of the contract in isolation 'but in light of the obligation as a whole and the intention of

the parties as manifested thereby.'" *U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc.*

*v. Westchester Cnty.*, 712 F.3d 761, 767 (2d Cir. 2013) (quoting *JA Apparel Corp. v. Abboud*,

568 F.3d 390, 397 (2d Cir. 2009)). Moreover, a court decree or judgment "is to be construed with

reference to the issues it was meant to decide." *Vicksburg v. Henson*, 231 U.S. 259, 269 (1913).

The Accounting Obligation in the Term Sheet requires Jennifer to provide the Trustee

with the Marital Asset List, essentially providing him with an accounting of the Jennifer Marital

Assets. *See* Term Sheet ¶ 4. The Turnover Obligation in the Term Sheet requires Jennifer to

"provide all of [the Other Marital Assets] that are listed in paragraph 4(e), 4(f), 4(g), 4(h), 4(i),

4(j), 4(k), and 4(l)" of the Term Sheet to either the Trustee or his counsel. *See id.* ¶ 5; *see also*

Judgment of Divorce at 7 ("ORDERED AND ADJUDGED, that in accordance with Paragraphs

4 and 5 of the Term Sheet, Jennifer shall provide all of the [Other Marital Assets] listed in

paragraph 4(e), 4(f), 4(g), 4(h), 4(i), 4(j), 4(k), and 4(l) to the Bankruptcy Trustee's attorney . . .

or the Bankruptcy Trustee"). Jennifer says that because the Transferred Marital Assets are

"expressly excluded" from paragraph 5 of the Term Sheet, which creates the Turnover

Obligation, and from the Final Judgment of Divorce, which incorporates the Term Sheet, she is

not obligated to turn over or deliver the Transferred Marital Assets or Sale Proceeds to the

Trustee. *See* Opposition ¶¶ 15, 37.

    The Court disagrees. First, the Turnover Obligation in paragraph 5 of the Term Sheet

does not "expressly exclude" the Transferred Marital Assets and Sale Proceeds, it is simply silent

as to the disposition of those assets. Moreover, as the Trustee contends, in making that argument,

Jennifer ignores the substance of her election in the Term Sheet to waive her claim to equitable

distribution of those assets in consideration for the enhanced $2.5 million Equitable Distribution

Payment from the Debtor. *See* Reply ¶ 1. Through that election, Jennifer effectively conveyed

her marital interest in the Transferred Marital Assets and Sale Proceeds to the Debtor's estate, in

consideration for the Debtor's payment of $250,000. The Court concurs with the Trustee that

Jennifer's construction of the plain language of the agreement runs afoul of that election and

wrongly provides her a $250,000 windfall by permitting her to retain the benefit of marital assets

that, under the Term Sheet, belong to the Debtor's estate, and for which she was paid $250,000.

*Id.* The Court also concurs with the Trustee that crediting Jennifer's interpretation of the Term

Sheet would render the Accounting Obligation in paragraph 4 of the Term Sheet superfluous and

meaningless. *See id.* ¶¶ 4; 12 ("A sworn list of assets sold would be a meaningless and pointless

requirement without an attendant obligation to either turnover the assets or their value.").

    On April 8, 2018, the Court granted Jennifer relief from the automatic stay in the Chapter

7 Case to continue the Matrimonial Action, including for the purpose of "the rendering of a

judgment determining the nature and extent of marital property, the nature and extent of the

Defendant's interest in such property, and the equitable distribution of such property." April

2018 Order at 2. Section 170(7) of the DRL requires the State Court to resolve the economic

issue of the equitable distribution of marital property and incorporate that resolution into a

judgment of divorce. *See* N.Y. DOM. REL. LAW § 170(7); *see also Hoffer-Adou v. Adou*, 121

A.D.3d 618, 619, 997 N.Y.S.2d 7, 9 (2014) ("[N]o judgment of divorce shall be granted under

[section 170(7)] unless and until the economic issues of equitable distribution of marital property

. . . are determined by the court and incorporated into the judgment of divorce." (citing N.Y.

DOM. REL. LAW § 170(7))). In other words, the Judgment of Divorce necessarily and finally

resolves title to the Marital Assets. In this light, Jennifer was provided the option to retain her

interest in Marital Assets that were in her possession at some point during the Matrimonial

Action that would be subject to equitable distribution. She rejected that option, choosing to

receive an additional $250,000 from the Debtor in respect of her equitable distribution of marital

property.

Accordingly, the Term Sheet incorporated the Accounting Obligation—to enable the

Trustee to ascertain the nature and extent of the Jennifer Marital Assets—and the Turnover

Obligation requiring Jennifer to turn over Marital Assets that remained in her possession.

Interpreting the Term Sheet and the Turnover Obligation to exclude the Sale Proceeds resulting

from the sale of the Transferred Assets would indeed render superfluous the Accounting

Obligation and would result in Jennifer's ability to retain the benefit of the Sale Proceeds in

addition to the $250,000 she was paid to relinquish her interest in all Marital Assets. *See Int'l*

*Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract

interpretations that render provisions of a contract superfluous." (citing *Scholastic, Inc. v. Harris*,

259 F.3d 73, 83 (2d Cir. 2001))); *see also Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)

("Under New York law an interpretation of a contract that has 'the effect of rendering at least

one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."

(quoting *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988))). Therefore,

despite the Term Sheet's silence with respect to the Transferred Assets and the Sale Proceeds,

the Court finds that the Turnover Obligation in the Term Sheet requires Jennifer to turn over the

Sale Proceeds to the Trustee or his counsel. *See Laws.' Fund for Client Prot. v. Bank Leumi Tr.

Co.*, 94 N.Y.2d 398, 404, 706 N.Y.S.2d 66, 69-70, 727 N.E.2d 563, 566-67 (2000) (rejecting

interpretation of contract that would render contractual provision superfluous as a "view

unsupportable under standard principles of contract interpretation").

Count VI – the Conversion Claim

The Trustee seeks summary judgment on Count VI of the Complaint, which asserts a

claim for common law conversion against Jennifer for diverting the value of the Transferred

Marital Assets and/or the Sale Proceeds from the Debtor's estate without authorization to do so.

To prevail on a claim for conversion, a plaintiff must demonstrate that

> (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff
> had ownership, possession or control over the property before its conversion; and
> (3) defendant exercised an unauthorized dominion over the thing in question, to the
> alteration of its condition or to the exclusion of the plaintiff's rights.

*In re Scott*, 572 B.R. 492, 526 (Bankr. S.D.N.Y. 2017) (quoting *Kirschner v. Bennett*, 648 F.

Supp. 2d 525, 540 (S.D.N.Y. 2009));*see also Moses v. Martin*, 360 F. Supp. 2d 533, 541

(S.D.N.Y. 2004); *Channel Marine Sales, Inc.*, 75 A.D.3d at 601 (noting that for a claim for

conversion, "the plaintiff must show legal ownership or an immediate superior right of

possession to a specific identifiable thing and . . . that the defendant exercised an unauthorized

dominion over the thing in question . . . to the exclusion of the plaintiff's rights" (quoting

*Messiah's Covenant Cmty. Church v. Weinbaum*, 74 A.D.3d 916, 919, 905 N.Y.S.2d 209

(2010))).

In support of the Complaint, the Trustee alleges that

He is the current beneficial owner of all property of the Debtor's estate, and that
he is entitled to receive all property of the Debtor's estate, including the
Transferred Marital Assets and Sale Proceeds;

Jennifer does not hold a valid legal interest in property of the Debtor's estate or
the Sale Proceeds; and

By diverting the value of the Transferred Marital Assets and/or the Sale Proceeds
from the Debtor's estate without authorization, Jennifer is wrongfully exercising
dominion and control over such assets to the exclusion of the Trustee's rights.

Complaint ¶¶ 51-53. He asserts that Jennifer has "knowingly and intentionally converted

property of th[e] bankruptcy estate for [her] ultimate benefit," *id.* ¶ 54, and that he is entitled to a

"judgment against [Jennifer] for the value of . . . any property of the Debtor's estate converted by

[her]." *Id.* ¶ 55.

The Trustee contends that he has satisfied the "two key elements" of a claim for

conversion: (1) a plaintiff's possessory right or interest in the property, and (2) a defendant's

dominion over the property or interference with it, in derogation of a plaintiff's rights." Motion ¶

25 (citing *Pappas*, 20 N.Y.3d 228, 958 N.Y.S.2d 656, 982 N.E.2d 576). He contends that by

application of section 236(B)(2) of the DRL, Jennifer was prohibited from transferring marital

assets during the pendency of the Matrimonial Action. That section provides that

[n]either party shall sell, transfer, encumber, conceal, assign, remove or in any way
dispose of, without the consent of the other party in writing, or by order of the court,
any property (including, but not limited to, real estate, personal property, cash
accounts, stocks, mutual funds, bank accounts, cars and boats) individually or
jointly held by the parties, except in the usual course of business, for customary and
usual household expenses or for reasonable attorney's fees in connection with this
action.

30

N.Y. Dom. Rel. Law § 236(B)(2)(b)(1) (McKinney 2021). The Trustee asserts that Jennifer sold the Transferred Marital Assets during the Matrimonial Action outside of the ordinary course of business and without seeking court authority or consent from the Debtor as required under section 236(B)(2) of the DRL. The Trustee contends that now that all Marital Assets, including the Transferred Marital Assets and Sale Proceeds belong to the estate, by refusing to turn over either to him, Jennifer has "exercised dominion over the marital assets and the proceeds from the sale of the marital assets in derogation of the Trustee's rights to same . . . ." Motion ¶ 28.

Jennifer raises four issues in opposing summary judgment on the Conversion Claim. First, she contends that the Trustee has not proven that the Sale Proceeds constitute specific money Jennifer is holding for the benefit of the Debtor in an identifiable and segregated fund, which she contends is necessary for a claim for conversion of money. *See* Opposition ¶¶ 43, 46-49. Second, she asserts that the Trustee has not established that he had ownership, possession or control over the Transferred Marital Assets before their conversion because she sold all 223 items on the Marital Asset List before the Petition Date. *See id.* ¶¶ 50, 54. She contends that the Debtor and the Trustee "did not obtain a superior right to the Debtor's marital assets until the Term Sheet was executed[.]" *Id.* ¶¶ 52-53. Third, she disputes that DRL § 236(B)(2) entitles the Trustee to prevail on the Conversion Claim. In substance, she contends that she did not run afoul of section 236(B)(2) because she used the Sale Proceeds to support herself and her children. *See id.* ¶¶ 55-58. Fourth, she argues that she sold six items listed in the Marital Asset List, representing $80,460 of the Sale Proceeds, more than three years before the Petition Date and, therefore, New York's three-year statute of limitations bars the Trustee from recovering that amount of the Sale Proceeds. *See id.* ¶ 59-60. The Court considers each of her arguments in turn.

Whether the Marital Assets and Sale
Proceeds are Specific and Identifiable Property

Jennifer argues that the Trustee has failed to satisfy the first element for a claim for conversion: that the property be a "specific identifiable thing." Opposition ¶ 42. She contends that, where the subject of conversion is money, "additional limitations apply." *Id.* ¶ 43 (citing *Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 106 (E.D.N.Y. 2001) ("When the property at issue is money, it must be 'specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." (quoting *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472, 475 (1995))). She maintains that because the Trustee seeks Sale Proceeds, he must show that the Sale Proceeds were "specific money that [Jennifer] was holding for the benefit of the Debtor in an identifiable fund or segregated account." *Id.* ¶ 46. She contends that the Trustee's conversion claim fails because the Sale Proceeds were "never placed into a discrete, identifiable fund of $210,637.32 in [Jennifer's] possession at a single time." *Id.* ¶ 47. Jennifer says that she spent the proceeds to address the financial shortfall created by the Debtor's noncompliance with a State Court order requiring him to make support payments. *See id.*

Jennifer misidentifies the subject of the Conversion Claim. Moreover, the cases supporting the proposition that there must be a specific, identifiable fund for conversion of money are distinguishable. In New York, "[i]t is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Global View Ltd. Venture Cap. v. Great Cent. Basin Expl. L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (quoting *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 559 N.Y.S.2d 704, 712 (1990); *see also Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases). The property that

Jennifer allegedly converted was not merely money such that it would be subject to the

requirement of being a "specific, identifiable fund." *Global View*, 288 F. Supp. at 479. "Many of

the . . . cases [supporting this proposition] involve bank deposits" where the bank is charged as a

defendant for conversion of funds deposited. *See Feinberg v. Katz*, Case No. 99 Civ. 45, 2002

WL 1751135, at *16 (S.D.N.Y. July 26, 2002); *see also Fundacion Museo de Arte*

*Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir.

1998) ("[F]unds deposited in a bank account are not sufficiently specific and identifiable, in

relation to the bank's other funds, to support a claim for conversion against the bank") (quoting

*Chem. Bank v. Ettinger*, 196 A.D.2d 711, 602 N.Y.S.2d 332, 336 (1993))); *Citadel Management*

*Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 151 (S.D.N.Y. 2000) ("[A]lthough the Amended

Complaint does allege the existing balance in the Telesis and Hertzog's Chase accounts when the

$5 million transfer was made, there is no allegation that the funds were in any manner segregated

within the accounts while held there, which is a prerequisite to stating a claim for conversion

against the derivative defendants."). As one court explained:

> Under law, funds deposited in a bank become the property of the bank, and the bank
> becomes indebted to the depositor for the amount of the funds deposited. Therefore,
> a conversion claim, predicated on the unlawful use of funds belonging to another,
> is not sustainable between a bank and a depositor with a standard debtor-creditor
> relationship.... [I]n [the situation of special deposits where the bank acts as bailee],
> a conversion claim could be sustainable due to the depositor's property right to the
> funds at issue.

*Nwachukwu v. Chem. Bank*, No. 96 Civ. 5118, 1997 WL 441941, at *5 (S.D.N.Y. Aug. 6, 1997).

The subject of the Trustee's Conversion Claim is specific and identifiable—the 223

items listed in the Marital Asset List that Jennifer sold during the Matrimonial Action and the

Sale Proceeds thereof. The Sale Proceeds are specific and identifiable because they relate to the

sale of specific and identifiable personal property, i.e., the Marital Assets. *See Kirschner v.*

*Bennett*, 648 F. Supp. 2d 525, 542 ("Funds may be 'specifically identifiable' despite the fact that

they are not alleged to be held in a segregated account."); *see also LoPresti v. Terwilliger*, 126

F.3d 34, 42 (2d Cir. 1997) (finding that money representing employees' union dues that were not

segregated but instead placed in the company's general account "does not mean that those

monies are not a 'specific identifiable thing' for purposes of imposing liability for conversion").

Jennifer does not dispute the amount of Sale Proceeds she received in respect of her sale of

Marital Assets, which amount is fixed and definite. *See Jones v. McHugh*, 37 A.D.2d 878, 325

N.Y.S.2d 102, 103 (1971) ("It is settled law that an action . . . lies for the conversion of a definite

sum of money, although the specific bills are not identified."); *see also Vanderbilt Univ. v.*

*Dipsters Corp.*, Case No. 84 Civ. 7215, 1986 WL 10471, at *3 (S.D.N.Y. Sept. 17, 1986)

("Plaintiff here has specifically identified the money at issue as the proceeds of the check drawn

by [Plaintiff] . . . payable to [the defendant], to the extent that those proceeds exceeded the

amount actually due [the defendant] for the goods [Plaintiff] ordered. . . . Consequently,

[Plaintiff] may properly bring this action for conversion."). Just because the Sale Proceeds were

not held in a segregated fund does not make them immune to an action for conversion. *See*

*Nissho Iwai Am. Corp. v. Siedler*, No. 94 Civ. 513, 1995 WL 555699, at *3 (S.D.N.Y. Sept. 18,

1995) (granting motion for summary judgment for conversion where defendants fraudulently

billed plaintiff, causing it to issue 31 checks totaling $1 million, where funds were not held in

any identifiable account). The proceeds are sufficiently identifiable and relate to tangible

personal property, the Marital Assets, such that the Conversion Claim is properly asserted with

respect to the Sale Proceeds. *See Payne v. White*, 101 A.D.2d 975, 976, 477 N.Y.S.2d 456 (1984)

(reversing lower court's dismissal of conversion claim in case where defendant withdrew funds

from plaintiff's bank account without authorization where "the funds in question were clearly

identifiable as the proceeds of a specific named bank account."); *see also Feinberg*, 2002 WL 1751135, at *18 (denying motion to dismiss conversion claim where "[t]he Amended Complaint alleges that specific amounts of money were misappropriated by the [defendants] from the Company. These funds are 'specifically identifiable' despite the fact that they are not alleged to be held by the defendants in a segregated account.").

The Transferred Marital Assets and the Sale Proceeds thereof are specific and identifiable property in which the Trustee has an ownership interest. There is no requirement that to prevail on the Conversion Claim the Trustee must demonstrate that the Sale Proceeds were held in a segregated account and held for the benefit of the Debtor. *See Feinberg v. Katz*, 2002 WL 1751135 at *17 ("The case at bar does not involve bank or investment accounts and therefore the special need for a segregated account does not arise."). The Trustee has demonstrated that he satisfies the first element of the Conversion Claim.

Whether the Trustee had Ownership, Possession
and Control of the Marital Assets and Sale Proceeds

To satisfy the second element of the Conversion Claim, the Trustee must establish that he had ownership, possession or control over the Transferred Marital Assets or the Sale Proceeds. *See, e.g.*, *In re Scott*, 572 B.R. at 526. Jennifer argues that the Trustee cannot satisfy this element because he cannot demonstrate that he or the Debtor had ownership, possession or control over the sold assets or the Sales Proceeds before their conversion. *See* Opposition ¶ 50. Jennifer contends that she sold all 223 items on the Marital Asset List before the Petition Date, during the Matrimonial Action, when they were marital property and neither she nor the Debtor had a superior right to ownership of those assets. *See id.* ¶¶ 50, 53. She maintains that "[u]nder New York law, a spouse cannot maintain a conversion action based upon a claim that the converted property was marital property during the pendency of the divorce." *Id.* ¶ 50-51 (citing *Hejailan-*

35

*Amon v. Amon*, 160 A.D.3d 481, 74 N.Y.S.3d 537 (1st Dept. 2018)). She says that the Debtor's

interest was exactly the same as her interest in marital property. *See id.* ¶ 52. Lastly, she contends

that the Trustee's superior right to the Debtor's Marital Assets did not arise until July 30, 2019,

when the Term Sheet was executed. *See id.* ¶ 53.

Jennifer is correct that between them, the Debtor did not have a superior interest in

marital property until execution of the Term Sheet. "Under New York law, one spouse's rights in

marital property owned by the other are inchoate and do not vest until entry of a judgment of

divorce." *DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625, 637 (Bankr. E.D.N.Y.

2006); *see also In re Anjum*, 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003); *In re Cole*, 202 B.R. 356,

360 (Bankr. S.D.N.Y. 1996). Jennifer's possession of the Transferred Marital Assets and Sale

Proceeds was, therefore, initially lawful, as to the Debtor.

However, once the Debtor filed for bankruptcy, "[t]he debtor's property [came] into the

bankruptcy estate free from the [non-debtor] spouse's inchoate interest, and the [non-debtor]

spouse has a claim to the debtor's property to the same extent as does any other unsecured

creditor." *In re DiGeronimo*, 354 B.R. at 637; *see In re Anjum*, 288 B.R. at 76 ("The courts have

uniformly held that when a final judgment of divorce has not been entered at the time of a

bankruptcy filing, the non-debtor spouse's rights may be no greater than that of a general

unsecured creditor."). "If the divorce judgment is not entered pre-petition, the trustee's rights as

a hypothetical lien creditor cut off the spouse's rights to the debtor's property. . . ." *In re*

*DiGeronimo*, 354 B.R. at 637; *see In re Cole*, 202 B.R. at 360. Instead, "the marital property

becomes property of the debtor's estate in its entirety under section 542 of the Bankruptcy Code

to be administered by the Chapter 7 Trustee for the benefit of all creditors." *In re Anjum*, 288

B.R. at 76; *see also In re Vann*, 113 B.R. 704, 706 (Bankr. D. Colo. 1990) ("Until dissolution of

marriage is commenced and the spouse takes some affirmative action to perfect her interest in

the marital property, her rights are inchoate, and had a judgment lien creditor perfected its lien on

the property prior to the spouse's perfection, her rights to the marital property would be

subordinate to those of the judgment lien creditor.").[30]

In light of the foregoing, Jennifer misplaces her reliance on *Hejailan-Amon v. Amon*, 160

A.D.3d 481, as support for her argument that an action for conversion cannot be maintained

where the property at issue is marital property. In that case, while a divorce proceeding was

pending in Monaco, the wife brought an action for conversion against her husband in New York

state court, seeking the return of artwork that was "marital property." The court identified three

issues preventing it from adjudicating the matter: the issue of equitable distribution had not yet

been determined in the divorce proceeding, the basis of the wife's claim for conversion was that

the property was "marital property", and the wife had already moved for an injunction over the

transfers of the marital property in the Monaco court, the only court with jurisdiction over the

marital issues. *See id.* at 483 ("Therefore, the wife's claim that the artwork is marital property

cannot be adjudicated in this action . . . There is no claim that the Monaco court cannot or will

not grant such relief."). The circumstances here are readily distinguishable. The Trustee's action

for conversion is brought not by Jennifer's spouse before the division of marital property had

been settled, but by a trustee of her debtor-spouse's bankruptcy estate after the conclusion of a

---

[30]    The Trustee's interest in property of the estate, which includes all equitable interests of the Debtor and included the marital property, is why Jennifer was required to obtain relief from the automatic stay in this Court to continue to prosecute the Matrimonial Action and to determine her and the Debtor's respective interests in marital property, both of which would be subordinate to the interests of the Trustee in the property. *See In re Anjum*, 288 B.R. at 78 ("In the usual case, the non-debtor spouse would apply to the bankruptcy court to lift the automatic stay to permit the parties to litigate their spousal rights and obligations (including equitable distribution) through to a judgment under state law in the matrimonial court."). The Court granted Jennifer stay relief but required bankruptcy court approval of any distribution of property or determination of title to assets of the bankruptcy estate. *See* April 2018 Order at 2. Subsequently, the Court determined that its approval was not required because Jennifer agreed to receive her equitable distribution payment from post-petition income of the Debtor and relinquished her interest in marital property. *See* Memorandum Decision at 17.

marital proceeding that vested the Trustee with all interest in marital property, as set forth in a

final Judgment of Divorce and the Term Sheet incorporated therein.

As of the Petition Date, the Trustee had a superior interest in the Marital Assets than

Jennifer, who had only an "inchoate" interest in the same. The law in New York is clear that

"[w]hen a defendant's possession of the property was initially lawful, there is no conversion

unless the defendant refuses the owner's demand to return the property or wrongfully transfers or

disposes of it before a demand is made." *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F.

Supp. 2d 411, 414 (S.D.N.Y. 2007) (citing *MacDonnell v. Buffalo Loan, Tr. & Safe Deposit Co.*,

193 N.Y. 92, 101, 85 N.E. 801 (1908)); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp.

3d 408, 414 (S.D.N.Y. 2018) ("[W]here possession of property is initially lawful, conversion

occurs when there is a refusal to return the property upon demand." (quoting *Salatino v. Salatino*,

64 A.D.3d 923, 925, 881 N.Y.S.2d 721 (2009))).

Jennifer's possession of the Transferred Marital Assets and Sales Proceeds was initially

lawful. When she sold the Transferred Marital Assets, Jennifer did not have a vested interest in

the property and the Sale Proceeds became marital property that remained subject to equitable

distribution. *See D.R.D. v. J.D.D.*, 74 Misc. 3d 237, 241-42, 160 N.Y.S.3d 767 (N.Y. Sup. Ct.

2021) ("[I]f a sale [of marital property] occurs [during the matrimonial action], the proceeds or

the liabilities remain subject to equitable distribution. What changes, upon sale, is simply the

form of marital asset: the property is converted into cash . . . and each spouse has all their claims

for separate property or otherwise to the now fungible cash proceeds."); *cf. Sykes v. Sykes*, 35

Misc.3d 591, 597, 940 N.Y.2d 474 (N.Y. Sup. Ct. 2012) ("The $3,795,000 in marital funds used

to purchase the residence, though no longer in the form of a liquid asset, remain part of the

marital estate subject to equitable distribution in the form of the [new residence] . . . . [I]t remains every bit as much marital property as it did when it was $3,795,000 in cash.").

Pursuant to the Term Sheet and the Judgment of Divorce, Jennifer agreed to relinquish all interests in marital property in exchange for the Equitable Distribution Payment. With respect to the specific Transferred Marital Assets at issue here, to account for the fact that only Jennifer knew the actual disposition of such property, *see* Reply ¶ 4 ("when the Term Sheet was agreed, the extent of the marital assets disposed of or sold by [Jennifer] was known only to her"), she was given the option to either retain the Jennifer Marital Assets and receive a $2.25 million Equitable Distribution Payment, or to relinquish the Marital Assets in consideration for a $2.5 million payment. Jennifer chose to surrender her interest in the Marital Assets in exchange for a payment of $250,000 more from the Debtor. Upon execution of the Term Sheet, therefore, Jennifer became obligated to return the assets, which are property of the estate, in whatever form they took, including cash. Once she refused to do so after due demand from the Trustee, she converted the Marital Assets and the Sale Proceeds in which she agreed to no longer hold any interest and which were determined by the Judgment of Divorce to belong to the estate. *See MacDonnell*, 193 N.Y. at 102 ("Having once lawfully acquired the physical custody of the bonds, the defendant could not be guilty of a conversion of them until it did something to indicate that it proposed to ignore the owner's rights, and assert its own claim in hostility thereto."); *see also In re White v. City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369 (1994) ("If possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand . . . ."); *Bernstein v. La Rue*, 120 A.D.2d 476, 477, 501 N.Y.S.2d 896 (1986) (same).

39

Because, pursuant to the Term Sheet and the Judgment of Divorce, the Trustee is entitled

to all marital property, upon Jennifer's refusal to return the Marital Assets and the Sale Proceeds

or equivalent value to the estate, for which she received $250,000 in consideration, a claim for

conversion accrued against Jennifer in favor of the Trustee.

Statute of Limitations

In New York, the statute of limitations on a conversion claim is three years. *See Marketxt*

*Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) ("In New

York, the statute of limitations for conversion is three years." (citing N.Y. C.P.L.R. § 214(3)));

*see also Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002) (same);

*Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 729 (S.D.N.Y. 2020). Jennifer argues that the

statute of limitations bars the Trustee from recovering the value of six items on the Marital Asset

List, for which she received $80,460, because she sold them more than three years before the

Petition Date. *See* Opposition ¶ 59.

The Court disagrees. As discussed above, proceeds from the sale of marital property

during a divorce proceeding become marital property and remain subject to equitable

distribution. *See D.R.D.*, 74 Misc. 3d at 241-42. However, pursuant to the Term Sheet and the

Judgment of Divorce, Jennifer relinquished her interest in the Marital Assets, including the

Transferred Marital Assets and Sale Proceeds, in exchange for the $2.5 million Equitable

Distribution Payment. The State Court entered the Judgment of Divorce on November 1, 2019.

At that point, Jennifer became obligated to return the Marital Assets, which are property of the

estate, in whatever form they took, including cash. The Trustee's conversion claim accrued when

Jennifer refused to do so after due demand from the Trustee. *See MacDonnell*, 193 N.Y. at 102.

The Trustee timely filed the Complaint on March 5, 2020.

Whether DRL § 236(B)(2) Provides
Jennifer with a Defense in this Adversary Proceeding

Jennifer contends that the Trustee misplaces his reliance on DRL § 236(B)(2) as support for the Summary Judgment Motion. *See* Opposition ¶¶ 55, 58. She maintains that is so because she sold the Transferred Marital Assets and used the Sale Proceeds "to pay for the necessary living expenses for her and her children," which was appropriate "because the Debtor . . . stopped paying the full amount of her court-ordered support" during the Matrimonial Action. *Id.* ¶ 57. As such, she asserts that those transfers fall within the safe harbor in the statute for the sale of marital assets "for customary and usual household expenses." N.Y. DOM. REL. LAW § 236(B)(2)(b)(1).

Although the Trustee cites section 236(B)(2) in support of his Conversion Claim, the claim does not rise or fall on the application of that section. The basis for the Trustee's Conversion Claim is Jennifer's wrongful refusal to provide the Trustee with the value of marital property in which she agreed, pursuant to the Term Sheet, to relinquish her interest in exchange for the Equitable Distribution Payment. The Term Sheet required that she return Marital Assets in her possession and provide an accounting of all Marital Assets she sold, gifted or donated. *See* Term Sheet ¶¶ 4-5. Without the attendant obligation of providing the value of the Marital Assets she sold, the requirement to provide an accounting of those assets would be meaningless. *See Columbus Park Corp. v. Dep't of Hous. Pres. & Dev.*, 80 N.Y.2d 19, 31, 586 N.Y.S.2d 554, 598 N.E.2d 702 (1992) ("[A] construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation."). Because of that agreement, whether she spent the funds on household expenses is irrelevant. Instead of continuing to litigate the issue of equitable distribution and seek to divide the marital property pursuant to the entitlements and allocations

provided for under the Domestic Relations Law, Jennifer and the Debtor chose to settle their

claims.

The Judgment of Divorce, which incorporates that settlement, is entitled to *res judicata*

effect with respect to the relative interest of Jennifer and the Debtor in marital property. *See*

Memorandum Decision at 24 ("The Judgment of Divorce is a final judgment on the merits that

resolves all matters that were or could have been raised in the Matrimonial Action, including all

those related to equitable distribution of the marital assets."). In the Memorandum Decision, the

Court noted that "[a]ll matters relating to the equitable distribution of property, including

Jennifer's right to a share of the Unaccounted For Marital Property, necessarily were resolved in

the Judgment of Divorce." *Id.* (citing *Boronow*, 71 N.Y.2d at 290, 525 N.Y.S.2d at 183 ("In a

matrimonial action . . . [t]he courts and the parties should ordinarily be able to plan for the

resolution of all issues relating to the marriage relationship in the single action.")). By the same

token, Jennifer's rights to a share of the Transferred Marital Assets were necessarily resolved in

the Judgment of Divorce—she surrendered them in exchange for $250,000.

Consequently, it is immaterial whether she was justified in selling the Marital Assets. *See*

*Rainbow*, 72 N.Y.2d at 110, 531 N.Y.S.2d at 777 ("a final judgment of divorce issued by a court

having both subject matter and personal jurisdiction has the effect of determining the rights of

the parties with respect to every material issue that was actually litigated or might have been

litigated"); *U.S. v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("Because the defendant has . . .

waived his right to litigate the issues raised, . . . the conditions upon which he has given that

waiver must be respected, and the instrument must be construed as it is written, and not as it

might have been written had the plaintiff established his factual claims and legal theories in

litigation."). Section 236(B)(2) does not provide Jennifer with a defense to liability in this

adversary proceeding.

Count VII – the Turnover Claim

The Trustee contends that he is entitled to turnover of the Sale Proceeds that Jennifer

received from the sale of the Transferred Marital Assets listed in the Marital Asset List. He

contends that it is undisputed that that all Marital Assets were awarded to the Debtor pursuant to

the Term Sheet, the Judgment of Divorce, and the Memorandum Decision. *See* Motion ¶ 24. He

contends that because the proceeds from the sale of Marital Assets (which are property of the

estate) are also property of the estate, the Trustee is entitled to turnover of Sale Proceeds and to

entry of summary judgment against Jennifer on the Turnover Claim. *See id.*

Section 542(a) of the Bankruptcy Code provides:

> an entity, other than a custodian, in possession, custody, or control, during the case,
> of property that the trustee may use, sell, or lease under section 363 of this title, or
> that the debtor may exempt under section 522 of this title, shall deliver to the
> trustee, and account for, such property or the value of such property, unless such
> property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). The turnover right in section 542(a) of the Bankruptcy Code is "in substance

a federal right of replevin—a right to recover the estate's property in kind, with the ability to get

the value of the property as a substitute." *In re Soundview Elite Ltd.*, 543 B.R. 78, 97 (Bankr.

S.D.N.Y. 2016) (quoting *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 849 (Bankr.

S.D.N.Y. 2013)).

To prevail on a claim for turnover, a plaintiff must demonstrate "(1) the property is in the

possession, custody or control of another entity; (2) the property can be used in accordance with

the provisions of section 363; and (3) the property has more than inconsequential value to the

debtor's estate." *Gletzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 327 (Bankr. E.D.N.Y. 2018);

*see also Kramer v. Mahia (In re Khan)*, 2014 WL 4956676, at *22 (Bankr. E.D.N.Y. Sept. 30, 2014).

In her Opposition to the Turnover Claim, Jennifer first argues that the Trustee has not proven that the Marital Assets were in Jennifer's possession "during the case." *See* Opposition ¶¶ 21-25 (citing 11 U.S.C. § 542(a) ("an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall delivery to the trustee, and account for, such property or the value of such property . . . .")). She also contends that the Trustee's failure to allege in the Complaint that she was in possession of any Sale Proceeds during the pendency of the Chapter 7 Case is fatal to the Turnover Claim. *See id.* ¶ 25.

In rejecting Jennifer's argument, the Trustee relies on *In re DJ Weaver Dev. Co., LLC*. In that case, the debtor sought turnover of a deposit paid to a contractor it employed to construct marine docks pursuant to section 542(a) of the Bankruptcy Code. *See In re DJ Weaver Dev. Co., LLC*, No. 06-33059, 2008 WL 5650060, at *6 (Bankr. E.D. Tenn. Nov 5, 2008). Because it found that the debtor was entitled to return of the deposit it paid, making it property of the estate, the court awarded a money judgment in the same amount as the deposit "because money is fungible, because [the contractor] no longer has the same dollars delivered to it by the [d]ebtor . . . and because § 542(a) allows the trustee to recover the property 'or the value of such property . . . ." *Id.*, at *10.

"Congress envisioned the turnover provision of § 542 . . . to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." *In re Khan*, No. 10-46901, 2014 WL 10474969, at *25 (E.D.N.Y. Dec. 24, 2014) (citing *Charter Co. v. Exxon Co., U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir. 1990)). "[I]n order

to state a claim for turnover of property under § 542, a plaintiff must allege . . . that the property

is . . . the undisputed property of the bankruptcy estate." *Stanziale v. Pepper Hamilton LLP (In re*

*Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del 2005).

No party disputes that the Marital Assets and Sale Proceeds are property of the estate. As

discussed above, Jennifer is collaterally estopped from arguing otherwise. Interpreting the Term

Sheet not to require Jennifer to turn over the value of the Marital Assets and Sale Proceeds

would render superfluous the Term Sheet's requirement that she prepare a list and an accounting

of the Marital Assets she sold during the Matrimonial Action and would result in her ability to

retain the benefit of the Marital Assets and Sale Proceeds in addition to the $250,000 she was

paid to relinquish her interest in the Transferred Marital Assets. Under these circumstances, that

Jennifer no longer has the exact Sale Proceeds she received from the sale of the Marital Assets is

not dispositive. *See In re Soundview Elite Ltd.*, 543 B.R. at 97 ("Under . . . section 542(a),

turnover of property may be sought and obtained by what is in substance a federal right of

replevin—a right to recover the estate's property in kind, with the ability to get *the value of the*

*property as a substitute*." (emphasis added)); *see also In re DJ Weaver Dev. Co., LLC*, 2008 WL

5650060, at *10 ("However, because money is fungible, because Parrott Marine no longer has

the same dollars delivered to it by the Debtor . . . and because § 542(a) allows the trustee to

recovery the property 'or the value of such property,' the court will award the Plaintiff a money

judgment . . . ."). Rather, what is dispositive is whether title to the property at issue is disputed. It

is not. It is clear that the Term Sheet created an obligation by Jennifer, with respect to Marital

Assets she could not physically turn over, to pay the value of such assets to the Trustee.

Accordingly, the Court determines that, because the Trustee is entitled to the Marital Assets and

the Sale Proceeds, Jennifer must turn over either the assets, the proceeds, or equivalent value, pursuant to section 542(a) of the Bankruptcy Code.

On the same set of facts, the Court finds alternatively that the Term Sheet created a payment obligation with respect to the value of the Transferred Marital Assets or the Sale Proceeds when Jennifer agreed to relinquish those Marital Assets in exchange for the Equitable Distribution Payment. *See Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 760 (S.D.N.Y. 1994) (the language of § 542(b) creates a "strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor."). As set forth above, it is undisputed that the Sale Proceeds are Marital Assets and that the Trustee is entitled to all Marital Assets, including the Transferred Marital Assets on account of Jennifer's acceptance of the Equitable Distribution Payment. *See In re Arcapita Bank B.S.C.(c)*, 628 B.R. 414, 478 (Bankr. S.D.N.Y. 2021) ("Debts owing to the debtor under a contract constitute property of the estate for purposes of Section 542(b) where it has been established that the contracting party was 'unconditionally liable' under the contract's terms.") (quoting *In re MF Glob., Inc.*, 531 B.R. 424, 437-38 (Bankr. S.D.N.Y. 2015). The debt is matured because it became payable upon Jennifer's acceptance of the Equitable Distribution Payment in exchange for the release of her claim to the Transferred Marital Assets. *See Sec. Inv. Prot. Corp. v. Rossi (In re Cambridge Capital, LLC)*, 331 B.R. 47, 57 (Bankr. E.D.N.Y. 2005) ("'Matured' [debt] refers to debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event." (quoting *Porter-Hayden Co. v. First State Mgmt. Grp., Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 732 (Bankr. D. Md. 2004)). Moreover, the debt is specific in amount—$210,637.32, i.e., the value of the Transferred Marital Assets. *See Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313

B.R. 46, 67 (Bankr. S.D.N.Y. 2004) ("In order for a claim to be considered a matured debt, it must be specific in its terms as to amount due and date payable."). That Jennifer disputes the existence of the debt does not alter the Court's conclusion that the Trustee is entitled to a payment in an amount equal to the Sale Proceeds pursuant to section 542(b) of the Bankruptcy Code. *See Kenston Mgmt. Co. v. Lisa Realty Co. (In re Kenston Mgmt. Co.)*, 137 B.R. 100, 108 (Bankr. E.D.N.Y. 1992) ("[F]or an action to be a turnover proceeding, it is not relevant that . . . the defendant dispute the existence of the debt by, perhaps, denying the complaint's allegations, as long as these allegations state the existence of a mature debt." (quoting *In re National Enterprises, Inc.*, 128 B.R. 956, 959 (E.D. Va. 1991))).

## Conclusion

Based on the foregoing, the Court grants the Summary Judgment Motion, awards the Trustee partial summary judgment on Count VI (Conversion Claim) and Count VII (Turnover Claim) of the Complaint and directs that a judgment be entered against Jennifer Brown totaling $210,637.32 (plus costs and prejudgment interest).

IT IS SO ORDERED.

Dated:  September 22, 2022
        New York, NY

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge